UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DEVRA HANEY-WILLIAMS, | Case No. 2:17-CV-2900 JCM (EJY) |
| Plaintiff(s), | ORDER |
| v. | |
| GLAXOSMITHKLINE LLC, et al., | |
| Defendant(s). | |

Presently before the court is third-party defendant Jubilant Cadista Pharmaceuticals, Inc.'s ("Jubilant") motion to dismiss (ECF No. 108) third-party plaintiff Sam's West, Inc.'s ("Sam's West") third-party complaint (ECF No. 100). Sam's West filed a response in opposition (ECF No. 119), to which Jubilant replied (ECF No. 122).

Also before the court is Jubilant's motion for summary judgment (ECF No. 135) as to Sam's West's third-party complaint. Sam's West filed a response (ECF No. 147), to which Jubilant replied (ECF No. 158).

**I.      BACKGROUND**

This action arises from injuries that plaintiff Devra Haney-Williams ("Devra") allegedly suffered as a result of her use of Lamotrigine, a generic prescription medication. (ECF No. 100). Devra originally filed her complaint in Nevada state court in October 2017. (ECF No. 1). The action was subsequently removed to federal court on November 20, 2017. (ECF No. 1). On November 13, 2018, Devra filed a first amended complaint adding Jubilant as a defendant. (ECF No. 30). Jubilant was eventually dismissed from the suit (ECF No. 69), but Sam's West obtained

**James C. Mahan**
**U.S. District Judge**

leave of this court to file a third-party complaint against Jubilant (ECF No. 98). The third-party complaint (ECF No. 100) contains the following allegations[1]:

Jubilant is a pharmaceutical company that manufactures Lamotrigine, a generic prescription drug used to treat epilepsy. (*Id.* at 3). On September 25, 2015, Devra was prescribed Lamotrigine. (*Id.*). On October 6, 2015, Sam's Pharmacy #10-4974 at 2650 East Craig Road, North Las Vegas, Nevada ("Sam's Pharmacy") "correctly" dispensed one bottle of 100mg tablets of Lamotrigine to Devra as directed by an electronic prescription transmitted to Sam's West by Devra's prescribing physician. (*Id.*). On October 13, 2015, Devra began taking the 100mg tablets of Lamotrigine at a rate of one tablet per day, ultimately resulting in injuries and damages, including a diagnosis of Toxic Epidermal Necrolysis (the "incident").[2] (*Id.* at 3).

On January 13, 2010, Sam's West entered into a written supplier agreement (the "agreement") with Jubilant to supply services and/or goods to Sam's West. (*Id.*). The agreement included an indemnity clause. (*Id.* at 4). The agreement was amended in January 2015 and updated on October 19, 2015, potentially indicating the agreement was in force and effect at the time of the incident in October 2015. (*Id.* ¶ 13).

Sam's West alleges causes of action for contractual indemnity, breach of contract, contribution, and declaratory relief. (ECF No. 100). Jubilant now moves to dismiss Sam's West's third-party complaint for failure to state a claim upon which relief can be granted (ECF No. 108), or, in the alternative, moves for summary judgment (ECF No. 158) as to the third-party complaint.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and

---

[1] At the motion to dismiss stage, the court is required to accept as true all well-pleaded allegations. Accordingly, the well-pleaded facts presented here are assumed to be true. Legal conclusions are not entitled to this assumption of truth.

[2] Plaintiff alleges in her first amended complaint that the Toxic Epidermal Necrolysis caused "blistering and loss of skin over eighty percent of her body, including tissue covering her eyes, rendering her permanently blind," (*See* ECF No. 30 ¶ 21).

**James C. Mahan**
**U.S. District Judge**

- 2 -

conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must have plausible factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id*. Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subject to the expense of discovery and continued litigation.

*Id*.

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**James C. Mahan**
**U.S. District Judge**

The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

### III. DISCUSSION

The court will first address the motion to dismiss as a threshold matter, and then turn to the motion for summary judgment, as necessary.

In deciding the motion to dismiss, the court must resolve two larger questions: 1) Was there an effective agreement at the time of the incident?; and 2) If so, does the indemnity clause apply? If no effective agreement existed, the inquiry ends and the motion to dismiss must be granted. If the agreement was valid and enforceable, the applicability of the indemnity clause becomes the dispositive question. The court addresses both guiding questions in turn.

#### A. A valid and enforceable agreement existed at the time of the incident

Jubilant argues that Sam's West did not plead sufficient facts to establish the existence of a valid and enforceable contract at the time of the incident. (ECF No. 108 at 11). Specifically, Jubilant contends that Sam's West's allegations rely generally on the January 13, 2010, agreement and purported renewals, and make no showing that the agreement even exists, or, even if it did exist, the allegations do not sufficiently plead that the agreement continued year after year in light of its unambiguous expiration clause. (*Id.* at 13). Jubilant concedes that a preceding supplier agreement was signed between the parties in 2008, but it argues that that agreement expired in 2009, and that there was no written agreement to renew or extend the contract. (*Id.* at 12).

Sam's West alleges that it has continued to do business with Jubilant under a 2010 supplier agreement and in the years following. (ECF No. 100 at 3). Sam's West supports this contention by alleging that the allowances and payment terms of the agreement were updated on October 19, 2015. (*Id.*). Sam's West explained in its opposition to this motion to dismiss that it did not attach the agreement to the third-party complaint due to its "confidential, proprietary information," but offered to produce copies for the court for in-camera review. (ECF No. 119, n.2).

**James C. Mahan**
**U.S. District Judge**

1  Jubilant argues that this court already dismissed the validity and enforceability of a
2  supplier agreement between the parties at the time of the incident when it dismissed Sam's
3  West's similar cross claims in December 2019.  (*See* ECF No. 69).  There, the court held that
4  "[t]he agreement's terms are abundantly clear as to its expiration date…and [i]n the absence of
5  some additional factual matter sufficient to plausibly establish a continuing contractual
6  relationship between the parties…the court is unable to draw a reasonable inference that Jubilant
7  is liable to Sam's Pharmacy[3] under the supplier agreement."  (*Id.* at 7–8).

8  The court now holds that Sam's West has provided sufficient additional factual matter to
9  plausibly establish that a valid and enforceable agreement existed in October 2015.  The fact that
10 updates to the agreement—in the form of updating allowances and payment terms—were made
11 on October 19, 2015, presupposes that an agreement existed at the time, and allows the court to
12 draw the reasonable inference that Jubilant and Sam's West were continuing to do business at the
13 time of the incident.

14 Jubilant counters that the court should reject this allegation as insufficient since Sam's
15 West did not allege what the "[t]erms of the [a]greement were, whether the [a]greement was
16 executed, and which parties executed the [a]greement, or the date(s) that the [a]greement had
17 been signed by each party."  (ECF No. 108 at 11).  However, Rule 8 does not require plaintiffs to
18 provide "detailed factual allegations," *Twombly*, 550 U.S. at 555; it merely demands pleading
19 beyond "naked assertions" devoid of factual enhancement.  *Iqbal*, 556 U.S. at 678.  Drawing all
20 reasonable inferences in favor of Sam's West, this burden has been met.

21 **B.  The indemnity clause does not apply**

22 The next question for the court is the applicability of the indemnification clause in the
23 agreement.  For reference, the language of the clause as included in the third-party complaint is
24 as follows:

25 **14. INDEMNIFICATION**. Supplier shall protect, defend, hold harmless and
26 indemnify Company, including its officers, directors, employees and agents, from

---

28 [3] Sam's Pharmacy is a subsidiary of Sam's West and is the named party in the first amended complaint. (*See* ECF No. 30).  The third-party complaint lists the entity Sam's West as the third-party plaintiff. (*See* ECF No. 100).

**James C. Mahan**
**U.S. District Judge**

- 5 -

and against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees and court costs), regardless of the cause or alleged cause thereof, and regardless of whether such matters are groundless, fraudulent or false, arising out of any actual or alleged:

[. . .]

(b) Death of or injury to any person, damage to any property, or any other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged use of or latent or patent defect in, such Merchandise, including but not limited to (i) any actual or alleged failure to provide adequate warnings, labelings or instructions, (ii) any actual or alleged improper construction or design of said Merchandise, or (iii) any actual or alleged failure of said merchandise to comply with specifications or with any express or implied warranties of Supplier [. . .]

(ECF No. 100 at 2).

As a preliminary matter, Sam's West avers that the agreement "clearly contains" a choice of law provision which mandates Arkansas law to govern the contract (ECF No. 119 at 2), but Sam's West did not include the choice of law provision language in its third-party complaint. (*See generally* ECF No. 100). Jubilant argues that Nevada law, not Arkansas law, applies since "Sam's West has not established that a valid contract existed at the time" of the incident. (ECF No. 122, n.1). However, Jubilant also asserts that "Arkansas law does not differ from Nevada's requirement of a clear, unequivocal and express statement regarding indemnification for an indemnitee's own negligence." (ECF No. 108 at 8).

Nevada law indeed abides by the "express negligence doctrine" when interpreting the application of indemnification in negligence claims. *George L. Brown Ins. V. Star Ins. Co.*, 126 Nev. 317, 324 (2010). More specifically, the Nevada Supreme Court has held that the express negligence doctrine requires that a party demanding indemnity from the consequences of its own negligence must express that intent in specific terms "within the four corners of the contract." *Id.* Arkansas law, however, is less clear, stating that indemnifying an indemnitee for its own negligence is "generally disfavored." *Potlatch Corporation v. Missouri Pacific Railroad Co.*, 902 S.W.2d 217, 222 (Ark. 1995).

Because the court finds that a valid contract existed at the time of the incident, and because Sam's West contends that the agreement contained an Arkansas choice of law provision,

James C. Mahan
U.S. District Judge

- 6 -

1  the court draws the reasonable inference in Sam's West's favor to apply Arkansas law at this
2  motion to dismiss stage.⁴

3  To begin, the Arkansas Supreme Court most recently held that "[a]greements to indemnify an indemnitee against its own negligence are generally disfavored, closely scrutinized, strictly construed against the indemnitee and in favor of the indemnitor, and will not be upheld unless expressed in such clear and unequivocal terms that no other meaning can be ascribed." *Potlatch*, 902 S.W.2d at 222. Arkansas courts have also held that while "no particular words are required," courts will not impose such indemnification "unless the purpose to do so is spelled out in unmistakable terms." *Ark. Kraft Corp. v Boyed Sanders Constr. Co.*, 764 S.W.2d 452, 453–54 (Ark. 1989) (the court held the following indemnification language—"[s]eller shall indemnify and hold [b]uyer harmless against any and all liabilities or claims for injuries or damages to any person or property arising out of such work"—insufficiently clear and unequivocal to require the seller to indemnify for any actions involving the buyer's negligence).

The *Kraft Corp.* court further held that the language of an indemnity clause "can be unambiguous and still not spell out in clear, unequivocal, unmistakable terms" the intention of the parties to obligate the indemnitor to indemnify for the indemnitee's negligence. *Id.* at 453. The twist in Arkansas law lies in *Pickens-Bond Construction Co. v. NLR Electric Co.*, 249 Ark. 389 (1970).

In *Pickens*, the Arkansas Supreme Court held that broad and sweeping indemnification language can clearly and unequivocally show the indemnitor's intention to obligate itself, *even for the negligence of the indemnitee*. *Id.* In that case, a general contractor (indemnitee) sought to recover from a subcontractor (indemnitor) all sums paid in settlement of a personal injury case against the subcontractor. *Id.* The language in the contract at issue stated, in relevant part, that the subcontractor "shall specifically assume, and does assume, all risks of damage or injury *from whatever cause* to property or persons used or employed on or in connection with his work." *Id.* at 391 (emphasis added).

---

⁴ The Ninth Circuit has held that a district court's choice of law analysis was proper even at the motion to dismiss stage. *Cooper v. Tokyo Electric Power Co. Holdings, Inc.*, 960 F.3d 549, 558 (9th Cir. 2020).

James C. Mahan
U.S. District Judge

- 7 -

The scope of the indemnification language in *Pickens* ("from whatever cause") is akin to the language found in the relevant agreement here (i.e., "regardless of the cause or alleged cause thereof…"). The critical caveat is that while *Pickens* held that it was *possible* for a broad, sweeping indemnification clause to be clear and unequivocal on the matter of indemnifying negligence, the court expressly did *not* extend its holding to instances where the indemnitee is *solely* negligent. *Id.* at 402.

The *Pickens* court clarified that while it found the broad indemnification clause to apply when the indemnitee was guilty of contributory negligence, indemnification would not apply if the indemnitee's negligence was the "sole proximate cause." *Id.*

Turning more specifically to the language at issue here, the indemnification clause in the parties' agreement is extraordinarily broad. In it, Jubilant indemnifies Sam's West "…from and against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees and court costs), **regardless of the cause or alleged cause thereof, and regardless of whether such matters are groundless, fraudulent or false…**" (*Supra* at 5; ECF No. 100 at 4) (emphasis added).

At the motion to dismiss stage, this language is broad and sweeping enough to encompass Jubilant's intention to even indemnify an alleged incident resulting from Sam's West's contributory negligence under Arkansas law. The crucial distinction here, however, is that this court already held that since Jubilant's liability was federally preempted (*See* ECF No. 69 at 6–7), the only question before the court in the overarching suit is whether Sam's West was *solely* negligent in how it filled Devra's prescription. And this court's reading of Arkansas law does not compel an interpretation that a broad indemnification clause should be applied to this type of sole negligence by an indemnitee.

Sam's West fiercely argues that Arkansas law "unequivocally" applies to Sam's West's claims for contractual indemnity pursuant to the agreement and that it is "undisputed that Jubilant expressly agreed to defend and indemnify Sam's West for incidents such as the incident alleged in the first amended complaint." (ECF No. 119 at 5–6). Sam's West further contends that the determination of its own negligence, even if proven at trial, "has no legal bearing" on

James C. Mahan
U.S. District Judge

- 8 -

Sam's entitlement to indemnification by the language in the agreement. (*Id.*). The court disagrees. As explained above, the fact that Jubilant's negligence is no longer at issue before the court is determinative of the applicability of the indemnification clause under Arkansas law.

Furthermore, because the court holds, as a matter of law, that Sam's West does not have a plausible claim for relief under the indemnification clause contained within the agreement—even when granting all reasonable inferences in Sam's West's favor—the court finds that amendment would be futile.

Accordingly, the court GRANTS Jubilant's motion to dismiss (ECF No. 108) Sam's West's third-party complaint (ECF No. 100) as to the first claim of contractual indemnity, with prejudice.

### C. Remaining Claims

*1. Breach of Contract*

Sam's West's breach of contract claim alleges Jubilant materially breached by not naming Sam's West as an additional named insured on Jubilant's certificates of insurance for purposes of paying any costs associated with indemnification. Since this claim is contingent upon the applicability of the indemnity clause, and since the court holds that the indemnity clause is inapplicable as a matter of law, the court GRANTS Jubilant's motion to dismiss (ECF No. 108) Sam's West's third-party complaint (ECF No. 100) as to the second claim of breach of contract, with prejudice.

*2. Contribution*

Pertaining to Sam's West's third claim of contribution, Jubilant avers, and Sam's West concedes, that this court's December 27, 2019, order (ECF No. 69)—ruling that causes of action against Jubilant for negligence, comparative negligence, and equitable indemnity were preempted by federal law—summarily disposes of this claim.

Accordingly, the court GRANTS Jubilant's motion to dismiss (ECF No. 108) Sam's West's third-party complaint (ECF No. 100) as to the third claim of contribution. The court dismisses this claim without prejudice consistent with its previous order. (*See* ECF No. 69).

. . .

**James C. Mahan**
**U.S. District Judge**

### 3. *Declaratory Relief*

Sam's West's final cause of action is declaratory relief, but declaratory relief is a remedy, not an independent cause of action. 28 U.S.C. § 2201; *see Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Because Sam's West asserts other independent causes of action, the court will liberally interpret the action as a request for a remedy.

Sam's West's initial claim for declaratory relief avers that it "is premised on the present controversy between the parties regarding the applicability and enforceability of the [s]upplier [a]greement and contractual indemnity obligations pursuant thereto." (ECF No. 119 at 14). As explained in Part III, *supra*, while the court finds the agreement valid and enforceable for purposes of this motion, it rejects enforceability of the indemnity obligations of the agreement under these facts. Thus, Sam's West's claim for declaratory relief on the matter of indemnification fails.

Sam's West also more generally seeks declaratory relief in judicial determination of its respective rights and Jubilant's duties and obligations pursuant to the agreement "as they pertain to [p]laintiff's lawsuit." (*Id.*). In analyzing a request for declaratory relief, courts determine "whether the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Courts cannot grant declaratory relief based on hypothetical facts or speculative issues. *See id.* at 126–35. Rather, the dispute must be "definite and concrete." *Id.* at 127.

The court finds that declaratory relief is improper here since the action is contingent on successful litigation of a pending tort suit—an outcome insufficiently definite or concrete to present a legally protectable interest creating a justiciable controversy ripe for declaratory relief. *Id; see also Knittle v. Progressive Cas. Ins. Co.*, 112 Nev. 8, 11 (1996). Prematurely granting such declaratory relief places the court in the impossible position of attempting to guess what facts might be determined at trial and then to apply those hypothetical facts to the agreement.

**James C. Mahan**
**U.S. District Judge**

- 10 -

Accordingly, Sam's West's request for declaratory relief is DENIED.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Jubilant's motion to dismiss (ECF No. 108) Sam's West's third-party complaint (ECF No. 100) be, and the same hereby is, GRANTED. The first and second claims against Jubilant are DISMISSED with prejudice. The third claim against Jubilant is DISMISSED without prejudice. Further, Sam's West's request for declaratory relief is DENIED.

IT IS FURTHER ORDERED that given the court's disposition of this matter at the motion to dismiss stage, Jubilant's motion for summary judgment (ECF No. 135) as to the third-party complaint, be, and the same herby is, DENIED, as moot.

The clerk is hereby instructed to dismiss Jubilant as a third-party defendant in this suit.

DATED January 14, 2022.

_____
UNITED STATES DISTRICT JUDGE